**STATE of Minnesota, Respondent,**

v.

**Douglas Alan STROMMEN,
Petitioner, Appellant.**

No. C9–00–1930.

Supreme Court of Minnesota.

Aug. 8, 2002.

John M. Stuart, State Public Defender, Marie Wolf, Assistant State Public Defender, Minneapolis, MN, Attorneys for Appellant.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, Wayne H. Swanson, Polk County Attorney, Crookston, MN, Attorneys for respondent.

## OPINION

PAGE, Justice.

Appellant Douglas Strommen was convicted of attempted robbery in violation of Minn.Stat. §§ 609.17, subd. 1, 609.24 (2000).[1] He appealed the conviction, alleg-

---

1. Minnesota Statutes § 609.17, subdivision 1, provides that "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime."

 Minnesota Statutes § 609.24 provides:

 Whoever, having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery and may be sentenced to imprisonment for not more than ten years

ing several errors, including errors in jury instruction, prosecutorial misconduct, erroneous admission of evidence, insufficient evidence, and ineffective assistance of counsel. On appeal, the court of appeals concluded that the trial court erred by failing to instruct the jury on accomplice testimony, but that the error was harmless. The court of appeals also concluded that the trial court erred by admitting testimony that Strommen had killed someone in the past, however, the court of appeals concluded that this error was not plain error warranting reversal. The court of appeals ultimately affirmed Strommen's conviction. *State v. Strommen*, No. C9–00–1930, 2001 WL 1034929, at *1 (Minn.App. Sept.11, 2001). We reverse and remand for a new trial.

The relevant facts are as follows. On March 23, 2000, at approximately 10:30 p.m., Strommen and Margaret Townsend walked into a Kum & Go convenience store in Crookston, Minnesota. The store's clerk, Rosalie Villa, was in the back of the store stocking the cooler at the time. Upon hearing the front-door buzzer, indicating that someone had entered the store, Villa returned to the front of the store and greeted Strommen and Townsend. According to Villa, Townsend had her hands up to her face and was wearing a makeshift mask. Noticing Villa looking at the mask, Strommen indicated that Townsend had been burned, although, in fact, she had not been burned.

According to Villa, both Strommen and Townsend were drunk. Townsend then began ordering Villa to give her money. At this point, Strommen told Villa that Townsend was "drunk" and that she was "just messing around." Within seconds, Townsend moved behind the counter and began trying to open the cash register. After Townsend moved behind the register, Strommen pulled the mask off her

face. Strommen and Townsend were arguing. Strommen said to Townsend, "Come on. Don't be stupid." Townsend said, "You told me if I didn't do this, you were going to kill me, so I'm doing this." Strommen responded, "I didn't want this. I just wanted liquor." Townsend responded, "Well, I did too. All I want to do is go to bed."

According to Villa, as Townsend continued trying to open the register, Strommen was pulling on her arm trying to get her away from the register. When Strommen asked Villa if he could come behind the counter, Villa told him no, and he obeyed. When Villa told him he should just leave the store, Strommen left the store and went outside, albeit after what may have been some slight hesitation. According to Villa, Strommen appeared to be gesturing to Townsend to come out also, which she did after about one minute. Before Townsend left, Villa asked her if she was okay. Townsend responded that she was not okay and that she just wanted Strommen to leave her alone. After Townsend left, Villa could see the two of them outside the store, either talking or arguing, for approximately half of a minute, at which point they parted ways, each walking in a different direction.

Villa called the police at 10:37 p.m. and they arrived shortly thereafter. Strommen was picked up approximately four blocks away from the convenience store. When questioned, Strommen admitted to being at the Kum & Go store to buy cigarettes and alleged that he had been hit by a man. He also stated that a woman had been involved and that he had just wanted some cigarettes. The officer who questioned Strommen found it difficult to understand him because of Strommen's intoxicated state. Strommen was taken back to the store, where Villa identified

or to payment of a fine of not more than $20,000, or both.

him. The officer testified that Strommen explained that he had brought a woman to the store, but that he had been trying to help the clerk out. Villa shook her head "no," indicating that Strommen had not been trying to help her out, and Strommen was arrested.

At trial, the state's theory of the case was that Strommen coerced Townsend into helping him attempt the robbery. Strommen's defense was that he was not guilty because he "desisted voluntarily and in good faith and abandoned the intention to commit the crime" as required by Minn. Stat. § 609.17, subd. 3 (2000). The state's witnesses were Villa, Townsend, and two police officers. Strommen did not testify. Townsend testified under a grant of immunity. She testified that, earlier in the evening, she and Strommen had been drinking what apparently were substantial quantities of beer and "Pucker" and that Strommen took some Valium. According to Townsend, Strommen at some point began growling and acting like a muscleman, which made her nervous. Although nervous, she went with him to a bar and, eventually, they decided to go to a store to get cigarettes for Strommen and a candy bar and chips for her. Townsend testified that, shortly before they arrived at the Kum & Go store, Strommen gave her a makeshift mask, told her to put it on, and told her that they were going to go in the store and get money. She testified that Strommen threatened that he would beat her if she did not do what he wanted her to do and that, after arguing in front of the store for about 15 minutes, Strommen hit her in the head with the receiver of a pay telephone located in front of the store. At this point, they went inside the store.[2]

During the state's direct examination of Townsend, she also testified that she was

afraid of Strommen because earlier in the evening he had told her about having kicked in doors and that he had once killed somebody during a fight. On that subject, the state elicited the following testimony from Townsend:

Q. Did [Strommen] talk about any type of criminal activity he has engaged in in the past?

A. I can't remember what brought the conversation up to that. I think it had to do with kicking in the doors, you know, I was asking him, you know, about it, and he said about a person that—something about he died or something when they were fighting.

Q. Did he talk in much great detail about that incident?

A. He just said that he killed somebody.

Q. Did he say that he had been charged for that crime?

A. Yes, he did.

Q. Did he say whether he was convicted?

A. I don't remember.

Strommen's defense counsel did not object to this testimony, but the trial court *sua sponte* called counsel to the bench for an off-the-record discussion and subsequently gave a cautionary instruction to the jury.

During the arresting police officer's direct testimony, the prosecutor elicited testimony suggesting that Strommen was known to the police because of past crimes:

Q. Had you ever had any contact with [Strommen] before [the incident on March 23]?

A. Yes.

---

2. Although Villa had been in the back of the store for approximately five minutes before Strommen and Townsend entered, she testified that she did not notice anyone in front of the store during the ten minutes prior to her going to the back of the store.

Q. Did you recognize him as Doug Strommen?

A. Oh, yes, I know who he is.

Q. How do you know him?

A. From, like you say, prior contacts and incidents.

Q. Do you know him on a first name basis?

A. I don't know if he knows me by my first name or not. I know him though.

Again, there was no objection from Strommen's defense counsel.

During closing argument, the prosecutor addressed attempted robbery and abandonment by stating:

Now, just take a look at the evidence. What would be a substantial step here? I tell you, the crime was committed, a substantial step occurred as soon as they walked in the store. As soon as they walked in the store with that mask on, with the intent to commit a crime, boom, the crime is committed. It doesn't matter what happened after that.

Strommen's defense counsel objected and the trial court gave the following curative instruction to the jury:

Members of the jury, as I told you in preliminary instructions, the law as it applies to this case is the law that will be given to you by this court in the instructions I will give you later, and you're to take the law from the instructions that I give you and not from the attorneys.

The state then continued its argument by addressing abandonment:

We may have a bit of a disagreement as to exactly what I meant when I said that, and I just want to be real clear as to what I said when I said the crime is committed. There is a caveat to that. It can be true that a crime is committed as soon as a substantial step is taken.

There is also going to be another step in there also, and that is: It can be possible that a crime is abandoned after a step is taken, and it's going to be your decision as to whether there is sufficient abandonment.

Also during closing argument, the prosecutor stated, "When we have difficult cases like this, sometimes the only way to deal with it is just to weigh the story in each hand and decide which one is most reasonable, which one makes the most sense." Although this statement was inconsistent with the state's burden of proving the offense beyond a reasonable doubt, defense counsel did not object.

After closing arguments, the trial court reminded the jury of its earlier cautionary instruction, as well as its earlier curative instruction, in addition to properly instructing the jury as to the elements of attempted robbery, the defense of abandonment, and the state's burden of proof. Strommen was found guilty of attempted robbery, in violation of Minn.Stat. §§ 609.17, subd. 1, 609.24. He was sentenced to 19 months in prison and fined $1,000.

Strommen appealed, arguing that he did not receive a fair trial because the trial court failed to give, and defense counsel failed to request, a jury instruction on accomplice testimony, and because the prosecutor committed misconduct by misstating the law regarding attempted robbery and abandonment and by misstating the state's burden of proof. Strommen also argued that the trial court erroneously admitted testimony from Townsend and the arresting officer from which one could infer that Strommen had a criminal record. Finally, Strommen argued that, as a matter of law, the evidence adduced at trial was insufficient to sustain his conviction for attempted robbery because the accomplice testimony was uncorroborated and

the evidence proved that Strommen abandoned the attempted robbery.

Affirming Strommen's conviction, the court of appeals concluded that, although the trial court erred in failing to instruct the jury on the corroboration of accomplice testimony, this error was harmless. The court of appeals also concluded that Strommen failed to carry his burden of proving that his defense counsel's failure to request the instruction amounted to ineffective assistance of counsel.

The court of appeals rejected Strommen's claims of prosecutorial misconduct, concluding that the trial court's curative instruction was sufficient to cure any error resulting from the prosecutor's misstatement of law regarding attempted robbery and abandonment and that the prosecutor's misstatement of the state's burden of proof did not result in plain error.

Regarding the admission of Townsend's testimony that Strommen had killed someone, the court of appeals declined to find plain error because the evidence that Strommen was guilty was "so strong" that the error would not have affected the outcome of the case. The court of appeals further concluded that it was not plain error to admit the arresting officer's testimony that he knew Strommen from "prior contacts and incidents" because such testimony showed merely that the police were aware of who Strommen was. Finally, the court of appeals concluded that the evidence was sufficient to sustain Strommen's conviction for attempted robbery.

## I.

Although Strommen makes several allegations of error, the principal thrust of his appeal is that he was denied the right to a fair trial. We conclude that the trial court erred by admitting evidence of other crimes allegedly committed by Strommen, and by failing to give the required instruction on accomplice testimony. We also conclude that the prosecutor engaged in misconduct when he misstated the state's burden of proof and when he misstated the law on the issue of abandonment. Therefore, we conclude that Strommen was denied a fair trial and, consequently, we reverse the court of appeals and remand for a new trial.

## II.

■ First, we address the admission of evidence relating to Strommen's involvement in other crimes. Because Strommen's defense counsel failed to object to the admission of this testimony, our review is under the plain error standard. *See* Minn. R.Crim. P. 31.02; *State v. Hage,* 595 N.W.2d 200, 204 (Minn.1999); *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998). The plain error standard requires that the defendant show: (1) error; (2) that was plain; and (3) that affected substantial rights. *Griller,* 583 N.W.2d at 740 (citing *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). "If those three prongs are met, we may correct the error only if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *State v. Crowsbreast,* 629 N.W.2d 433, 437 (Minn.2001) (quoting *Johnson,* 520 U.S. at 467, 117 S.Ct. 1544 (internal quotation marks and citations omitted)); *see Griller,* 583 N.W.2d at 740.

■ The state contends that the admission of Townsend's testimony about Strommen's kicking in doors and killing someone was necessary to show that Townsend participated in the attempted robbery because she feared Strommen. While this argument explains Townsend's motive for participating in the charged crime, her motive was not relevant to determining Strommen's guilt. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Townsend's motivation for participating in the charged offense was not relevant to the determination of the charges against Strommen. Townsend was not on trial for her participation in the attempted robbery and Strommen was not charged with an offense based on his conduct toward Townsend. Therefore, Townsend's testimony regarding Strommen's kicking in doors and killing someone was inadmissible.

■ In addition to being inadmissible on grounds of relevance, the testimony was highly prejudicial and should have been excluded under Minn. R. Evid. 403. Rule 403 provides that, notwithstanding its relevance, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Here, the testimony was prejudicial because it portrayed Strommen as a person of bad character and the jury may have been motivated to punish Strommen for his other bad acts. *See State v. Norgaard,* 272 Minn. 48, 51, 136 N.W.2d 628, 631 (1965) ("It has been held that prejudice resulting in the minds of the jury by asking improper questions relating to other bad acts may require reversal."). In a criminal prosecution, a prosecutor may not attack the character of a defendant until the defendant puts his or her character in issue. Minn. R. Evid. 404(a)(1); *State v. Currie,* 267 Minn. 294, 301, 126 N.W.2d 389, 395 (1964). In this case, Strommen had not put his character in issue and, therefore, the character attack was improper.

■ The trial court's cautionary instruction did not mitigate the admission of the objectionable portions of Townsend's testimony. That instruction reads as follows:

I'm going to give you a cautionary instruction on the evidence which was just received in this matter. The state has offered evidence of alleged occurrences on unspecified dates prior to March 23, 2000. This evidence is being offered for the limited purpose of assisting you in determining whether the defendant committed those acts with which the defendant is charged in the complaint in this proceeding. The defendant is not being tried for and may not be convicted of any offense other than the charged offense. You are not to convict the defendant on the basis of any of the occurrences referred to prior to March 23, 2000. To do so might result in unjust double punishment.

This instruction was an adaptation to the facts of this case of CRIMJIG 2.01 and 3.16, which ordinarily are given in connection with the introduction of *Spreigl* evidence. 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 2.01, 3.16 (4th ed.1999). The problem, however, is that the issue raised by Townsend's testimony was whether it was admissible in the first instance. Because the testimony was inadmissible, the trial court's instruction should have been curative, rather than cautionary, and the inadmissible testimony should have been stricken. Instead, the cautionary instruction suggested to the jury that Strommen's having killed someone was relevant to whether Strommen committed the attempted robbery and in doing so exacerbated its prejudicial effect.

■ Finally, with respect to the testimony elicited from the arresting officer that he knew Strommen on a first-name basis and from "prior contacts and incidents," the court of appeals concluded that, while this evidence may been irrelevant, its admission did not change the outcome of the case. From a review of the record, Strommen's identification does not appear to have been the intended purpose of the

questions eliciting the officer's testimony regarding "prior contacts and incidents." Before the offending questions were asked, the officer had been asked and had answered questions identifying Strommen as matching the general description of the individual who was involved in the March 23, 2000, incident at the Kum & Go store.[3] Thus, to the extent that the questions were intended to establish that the person the officer arrested was indeed Strommen, the questions were unnecessary.[4]

■ Moreover, Strommen's identity does not appear to have been an issue in this case. Strommen's defense at trial was that he was not guilty because he abandoned the attempted robbery. He did not claim that it was someone else and not he who was involved. It appears that the purpose in asking the offending questions was to illicit a response suggesting that Strommen was a person of bad character who had frequent contacts with the police. For this reason, as with Townsend's testimony regarding Strommen's having kicked in doors and having killed someone, this testimony was highly prejudicial and it reinforced the prejudicial impact of the inadmissible testimony from Townsend. Therefore, we conclude that the trial court erred by admitting the testimonies from Townsend and the arresting officer.

■ Having concluded that the trial court erred by admitting the testimonies from Townsend and the arresting officer, we must next determine whether the errors were plain. An error is "plain" if it

was "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Ihle*, 640 N.W.2d 910, 917 (Minn.2002). Under facts similar to those before us, we have held that the state cannot "be permitted to deprive a defendant of a fair trial by means of insinuations and innuendoes which plant in the minds of the jury a prejudicial belief in the existence of evidence which is otherwise inadmissible." *Currie*, 267 Minn. at 301, 126 N.W.2d at 395. Because Townsend and the arresting officer's testimony about Strommen's previous bad acts was clearly irrelevant and highly prejudicial, we conclude that the error was plain.

■ We further conclude that the erroneous admission of Townsend's testimony and the arresting officer's testimony affected Strommen's substantial rights. An error affects substantial rights if the error is prejudicial—that is, if there is a reasonable likelihood that the error substantially affected the verdict. *State v. Smith*, 582 N.W.2d 894, 896 (Minn.1998); *Van Buren v. State*, 556 N.W.2d 548, 551 (Minn.1996). The problems with the testimony from both Townsend and the arresting officer were relevance and prejudice. Given these problems, we conclude that, on the record presented, the erroneous admission of testimony relating to Strommen's other bad acts and interaction with the police substantially affected the verdict. Based on these errors, we conclude that Strommen did not receive a fair trial. Therefore, it is necessary to reverse Strommen's

---

3. At trial, the prosecutor asked the arresting officer:

Q. Did you eventually find somebody that you believed fit that description?

A. Yes, I saw a male suspect that matched the general description.

Q. Where did you find that suspect?

A. Behind the M & H gas station there is a set of railroad tracks, and I saw the defendant walking from the railroad tracks down

the bank and end up in the alley right behind the Captain Crooks bar there on the North Main Street.

Q. It was the defendant you saw do that?

A. That's correct.

4. We note that, before the officer's testimony, Villa and Townsend had identified Strommen as being involved in the incident at the Kum & Go store.

conviction and remand for a new trial to ensure the fairness and integrity of the judicial proceeding.

## III.

Although we reverse based on the erroneous admission of evidence, to provide guidance on remand, we address Strommen's claims regarding the failure to give a jury instruction on accomplice testimony and prosecutorial misconduct.

 Regarding the omission of the jury instruction on accomplice testimony, we first note that a conviction cannot rest on the uncorroborated testimony of an accomplice. *See* Minn.Stat. § 634.04 (2000)[5]; *State v. Clements*, 82 Minn. 434, 443, 85 N.W. 229, 232 (1901). As a rule, trial courts have a duty to instruct juries on accomplice testimony in any criminal case in which it is reasonable to consider any witness against the defendant to be an accomplice. *State v. Shoop*, 441 N.W.2d 475, 479 (Minn.1989). The rationale for this rule is that the credibility of an accomplice is inherently untrustworthy. *State v. LaJambe*, 300 Minn. 539, 541, 219 N.W.2d 917, 919 (1974); *see State v. Azzone*, 271 Minn. 166, 170, 135 N.W.2d 488, 493 (1965) ("The object of [Minn.Stat. § 634.04] is to provide a check upon the credibility of testimony of a person who, having been admittedly involved in criminal conduct, might be disposed to shift or diffuse responsibility in order to curry the favor of law enforcement officials."). As we noted

in *Shoop*, "The accomplice may testify against another in the hope of upon a promise of immunity or clemency or to satisfy other self-serving or malicious motives." 441 N.W.2d at 479. Absent an instruction on accomplice testimony, there is the very real possibility that the jury could reject corroborating evidence and convict on the testimony of the accomplice standing alone. *See id.* at 481. Thus, the duty to instruct on accomplice testimony remains regardless of whether counsel for the defendant requests the instruction.[6] Here, there was no question that Townsend was an accomplice. Yet, the trial court failed to give the instruction.

 We next address the prosecutor's misstatement of the law on abandonment. The law is clear in providing that "[i]t is a defense to a charge of attempt that the crime was not committed because the accused desisted voluntarily and in good faith and abandoned the intention to commit the crime." Minn.Stat. § 609.17, subd. 3. Because Strommen's defense was that he abandoned his attempt to rob the store, what happened after Strommen walked into the store was critical to whether the jury could properly convict Strommen of attempted robbery. Therefore, it was improper for the prosecutor to state, during his closing argument, that it did not matter what happened after Strommen walked into the store. Here, the jury rejected what our review of the record suggests was strong evidence of abandonment.[7] Al-

---

**5.** Minnesota Statutes § 634.04 provides:

A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

**6.** We reach this conclusion notwithstanding *State v. Soltau*, 212 Minn. 20, 25, 2 N.W.2d 155, 158 (1942), which stated that "[i]t is not

error to fail to give an unrequested cautionary instruction."

**7.** Strommen's actions showing abandonment include the following: when Townsend demanded money, Strommen told Villa, "She's just messing around. She's drunk"; Strommen pulled off Townsend's mask when Townsend was behind the register; Strommen told Townsend, "Come on. Don't be stupid"; when arguing with Townsend, Strommen told her that he did not "want this," he "just wanted liquor"; Strommen asked permission

though the trial court, in its final instructions, gave the correct instruction on abandonment, we cannot say with certainty that the prosecutor's misstatement of the law did not play a role in that rejection.

The same is true for the prosecutor's misstatement of the state's burden of proof. To tell the jury to "weigh the story in each hand and decide which one is most reasonable, which one makes the most sense," was a misstatement of the state's burden to prove each element of the crime charged beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In the context of a criminal trial, "[m]isstatements of the burden of proof are highly improper." *State v. Hunt*, 615 N.W.2d 294, 302 (Minn.2000). While we note that in the final instructions the trial court properly instructed the jury on the state's burden of proof, we conclude that the misstatement, in the context of this trial, presented a source of confusion for the jury and may have played a role in the decision to convict.

Finally, we note that the trial court's failure to instruct the jury on accomplice testimony and the prosecutor's misstatements of law concerning abandonment and the state's burden of proof support our conclusion that Strommen was denied a fair trial.

Reversed and remanded for a new trial.

of Villa to walk behind counter; Strommen remained on the customer side of the counter when Villa denied him permission; Strommen tried pulling Townsend's arm to pull her away from the register; Strommen left the store at Villa's suggestion; while standing outside, Strommen motioned for Townsend to leave the store and come outside as well; and Strommen himself never made any demands for money.