*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1930**

State of Minnesota,
Respondent,

vs.

Adolph Donte Valentine,
Appellant.

**Filed December 1, 2014
Affirmed
Smith, Judge**

Olmsted County District Court
File No. 55-CR-12-2784

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm appellant's conviction of fourth-degree sale of a controlled substance because the evidence is sufficient to support the verdict. As to appellant's alternative

argument, he is not entitled to a new trial because the district court did not plainly err in its evidentiary rulings.

## FACTS

In January 2012, a confidential informant working with the Rochester Police Department called Adolph Donte Valentine to negotiate a purchase of illegal drugs. The plan was for the buy to occur in a Rochester hotel room, wherein police had set up concealed audio and video equipment, and to let Valentine leave without confrontation so that police could continue to build a case against him. The informant, J.B., was cooperating in exchange for the dismissal of a pending prostitution charge against her.

The operation involved three different hotel rooms: the "target" room, wherein the transaction was to occur, a "clean" room wherein J.B. was kept before and after the buy, and a surveillance room wherein officers watched and recorded the hidden-camera video. Before the buy, officers searched the target room to ensure that no drugs or money were present, and an officer searched J.B. in the clean room to verify that she was not carrying any drugs or money. Officers installed their surveillance equipment in the target room and gave J.B. $60 after recording the serial numbers of the bills.

When officers were ready, J.B. called Valentine on the phone several times, and police recorded the calls. J.B. and Valentine agreed that J.B. would buy a certain amount of drugs for a certain amount of money, and Valentine would bring the drugs to the hotel room. When Valentine arrived, J.B. let him into the room.[1] Officers in the surveillance

---

[1] The surveillance devices did not capture the entire transaction because of the camera's limited field of view.

room observed that Valentine seemed agitated. To hurry things along and avoid risks to J.B.'s safety, one of the officers called J.B.'s cell phone posing as a john on his way to the room to do business with J.B. Valentine then frisked J.B. and asked for more money. J.B. refused and said, "I gave you everything I got." Valentine left the room without incident, and officers did not confront him.

After Valentine left, officers entered the target room and found a plastic baggie containing five pills in plain view on a table. One officer took charge of J.B. and moved her back to the clean room. Another officer seized the pills. Officers searched J.B. and the target room and found no buy money and no other contraband. Later analysis revealed that the pills were benzylpiperazine, a schedule I controlled substance.

In April 2012, respondent State of Minnesota charged Valentine with one count of fourth-degree sale of a controlled substance. He waived his right to a jury trial and proceeded to a bench trial. The state relied heavily on circumstantial evidence established by testimony from the officers because J.B. did not appear to testify. The state's theory was that the presence of buy money and absence of drugs before Valentine arrived, together with the presence of drugs and the absence of money after he left, leads to the conclusion that a drug sale occurred.

Although the state did not have transcripts prepared, the audio recordings of J.B.'s phone conversations with Valentine were admitted in evidence without objection and played in open court. The district court permitted the state to stop the audio recordings for a police witness to interpret the jargon J.B. and Valentine used. The state focused the district court's attention on an exchange wherein J.B. proposed "five for thirty," which

the witness interpreted as an offer to buy five pills for $30, and then she agreed to "five for fifty," which the witness interpreted as an agreement to buy five pills for $50. The video surveillance recording also was played with similar commentary, but again the audio portion was not transcribed.

The defense theory was that the circumstantial evidence did not eliminate the possibility that J.B. might have framed Valentine by sneaking the drugs into the target room. The male officer who searched J.B. in the clean room admitted not conducting so thorough a search that it would have been impossible for J.B. to keep the drugs hidden. Defense counsel suggested that this possibility might have been eliminated had a female officer conducted the search.

From the bench, the district court returned a guilty verdict, concluding that "[t]he only reasonable inference" supported by the circumstantial evidence was "that [Valentine] brought and left the drugs in the room and received and departed with the money." The district court observed that it was possible that J.B. sneaked the drugs into the target room to frame Valentine, but it discarded that hypothesis as unreasonable because it would involve committing felony possession of a controlled substance in the presence of police officers in order to get a gross-misdemeanor prostitution charge dismissed. The district court discussed the audio recordings of the telephone calls and concluded that the calls were "consistent with setting up a drug purchase." The district court later issued a written verdict incorporating the reasoning and findings it stated from the bench.

**D E C I S I O N**

**I.**

"In reviewing a sufficiency of the evidence claim, [appellate courts] are limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the [decision-maker] to reach [its] verdict." *State v. Hatfield*, 639 N.W.2d 372, 375 (Minn. 2002). In this analysis, circumstantial evidence is given "as much weight as any other kind of evidence, as long as the circumstances are both consistent with the hypothesis that the defendant is guilty and inconsistent with any rational hypothesis except that of guilt." *Id.* at 376. To support a guilty verdict, circumstantial evidence must form "a complete chain which, in light of the evidence as a whole, leads so directly to the guilt of the accused as to exclude, beyond a reasonable doubt, any reasonable inference other than that of guilt." *Id.* (quotations omitted); *accord State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010).

We review circumstantial evidence under a two-step process—first to identify the circumstances proved and second to "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved." *Al-Naseer*, 788 N.W.2d at 473-74 (citation and quotation omitted). In the first step, we give deference to the fact-finder's acceptance of the proof offered by the state and rejection of contrary evidence. *Id.* at 473. But in the second step, "[w]e give no deference to the fact finder's choice between reasonable inferences." *Id.* at 474 (quotation omitted). "[I]f any one or more circumstances found proved are inconsistent with guilt, or consistent with innocence, then a reasonable doubt as to guilt arises." *Id.* (quotation omitted).

5

Based on our examination of the district court's written and oral verdicts, we conclude that these 10 circumstances were proved: (1) the telephone calls between J.B. and Valentine were consistent with setting up a drug purchase; (2) Valentine came to J.B.'s hotel room in response to those calls; (3) Valentine is the man police captured on video during the operation; (4) there were no drugs in the target room before Valentine entered; (5) there were drugs in the room after Valentine left; (6) the pills police recovered were a controlled substance; (7) before Valentine entered the target room there was $60 of buy money in the room before Valentine entered the room, (8) the buy money was gone when he left; (9) Valentine knew he was selling a controlled substance; and (10) the events occurred in Olmsted County in January 2012.

Valentine's circumstantial-evidence analysis relies heavily on the district court's observation that J.B. could have hidden the drugs and sneaked them into the room. Valentine argues that we should treat that observation as an additional circumstance proved and that his conviction must be reversed because this circumstance is inconsistent with guilt and consistent with innocence. We reject this argument because Valentine's characterization of the district court's comment as a "circumstance proved" is not consistent with the plain meanings of the words the district court used.

The district court stated, "[I]t is *possible* that [J.B.] had hidden the drugs on her person. The police didn't detect it. And she produced the drugs for the police falsely claiming that what had just occurred was the defendant selling her drugs." (Emphasis added.) "Possible" is defined as "[c]apable of happening . . . without contradicting proven facts." *The American Heritage Dictionary of the English Language* 1375 (5th ed.

2011).  Thus a more accurate characterization is that the district court acknowledged a hypothetical possibility.  The district court did not conclude that J.B. sneaked drugs into the room, and Valentine points to no evidence supporting that conclusion.  We therefore limit our circumstantial-evidence analysis to the 10 proven circumstances enumerated above, which are explicitly supported by the district court's factual findings.

Based on its findings about the circumstances proved, the district court concluded: "The only reasonable inference is that [Valentine] brought and left the drugs in the room and received and departed with the money.  That's a drug sale."  The district court noted that the defense theory would require J.B. to commit felony-level possession of a controlled substance in the presence of police officers and frame Valentine for possession of the drugs, all in an effort to get a gross-misdemeanor charge dismissed.  The district court opined that "the risk benefit of such a gambit is just way out of proportion and seems . . . entirely unreasonable" and concluded that the defense theory did not present a reasonable inference inconsistent with guilt.  We agree.

The supreme court has held that, "if any one or more circumstances found proved are inconsistent with guilt, or consistent with innocence, then a reasonable doubt as to guilt arises."  *Al-Naseer*, 788 N.W.2d at 474.  Here, none of the circumstances proved are inconsistent with guilt or consistent with innocence.  Without that support, the defense theory raises no more than a metaphysical doubt about Valentine's guilt.  We therefore reject the defense theory and conclude that the circumstantial evidence is sufficient to support the district court's verdict.

## II.

In the alternative, Valentine asserts that, because J.B.'s statements during the pre-buy phone calls are inadmissible hearsay, he is entitled to a new trial, maintaining that the district court committed prejudicial error by relying on those statements as substantive evidence. Valentine did not object to the admission of the audio recordings at the time they were offered, and the district court noted that they were "received without objection." Our review of their admissibility therefore is governed by the plain-error standard. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

Under the plain-error standard, the defendant must show that three conditions exist: (1) there was error; (2) the error was plain; and (3) the error affected the defendant's substantial rights. *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). If those conditions exist, "we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

Our analysis is complicated by the manner in which the recordings were presented here and comments the state made after their presentation. The district court heard the recorded conversations along with commentary from a police officer who interpreted the jargon and clarified portions that were not clear due to the poor quality of the recording. After presenting the evidence and the witness's commentary, the state acknowledged that J.B. would not testify and told the district court that "[a]ny statements that have been offered by her are not offered for the truth of the matter asserted, but instead to explain or provide a context for subsequent conduct by [Valentine] and the officers in completing this operation."

8

Valentine asserts that the state's comment amounts to an admission that all of J.B.'s statements during the telephone calls were inadmissible hearsay. We disagree. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). The effect of the state's comment therefore was the opposite of the effect Valentine claims. Moreover, the truth or falsity of the statements J.B. made during the phone calls is not relevant to the verdict. For example, during the key phone call, J.B. stated that she would buy "five for fifty," which the witness interpreted as a statement that she would pay Valentine $50 for five pills. Whether that statement is true—whether J.B. really would buy "five for fifty"—is not relevant to the verdict. What is relevant is that the conversation occurred and that it provided context for Valentine's appearance at the hotel room, the disappearance of the buy money, and the appearance of the drugs. The corresponding proven circumstance given by the district court is that "[t]he telephone calls [were] consistent with setting up a drug purchase."

Returning to the conditions required by the plain-error standard, we conclude that on this record there is not plain error. We therefore need not consider whether any error that may have occurred was prejudicial or whether any correction is warranted. Valentine is not entitled to a new trial.

**Affirmed.**

9