*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1275**

State of Minnesota,
Respondent,

vs.

James Michael Soderbeck,
Appellant.

**Filed December 28, 2015**
**Affirmed**
**Larkin, Judge**

Ramsey County District Court
File No. 62-CR-13-8317

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Larkin, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

On remand from the Minnesota Supreme Court, appellant argues that the cumulative effect of several trial errors denied him a fair trial and that his resulting convictions should therefore be reversed. Because the errors are not egregious compared to those in the relevant supreme court cases, and because the evidence supporting appellant's convictions is strong, we affirm.

## DECISION

A jury found appellant James Michael Soderbeck guilty of possession of a firearm by an ineligible person and two counts of terroristic threats based on evidence that Soderbeck threatened to kill his mother, D.S., and his nephew, A.S., and that D.S. found a shotgun in a closet in Soderbeck's bedroom after the threats were made.

Soderbeck appealed to this court, and we affirmed. *State v. Soderbeck*, No. A14-1275, 2015 WL 3822892, at *1 (Minn. App. June 22, 2015), *vacated in part and remanded*, No. A14-1275 (Minn. Sept. 15, 2015) (order). Although we determined that there were several evidentiary errors at Soderbeck's trial, we only considered the objected-to errors in our cumulative-error analysis. *Id.* at *9-10. We held that the cumulative effect of those errors did not warrant reversal. *Id.* at *10-11.

The supreme court granted Soderbeck's petition for further review and vacated the portion of our opinion "addressing the cumulative effect of the district court's objected-to and unobjected-to errors," and remanded to this court "solely for the purpose of re-considering the cumulative effect of the district court's objected-to and unobjected-to

errors in light of *State v. Bustos*, 861 N.W.2d 655 (Minn. 2015), *State v. Mayhorn*, 720 N.W.2d 776 (Minn. 2006), and *State v. Strommen*, 648 N.W.2d 681 (Minn. 2002)." *State v. Soderbeck*, No. A14-1275 (Minn. Sept. 15, 2015) (order). That precedent suggests that all trial errors are considered when conducting a cumulative-error analysis, including unobjected-to errors. *See Mayhorn*, 720 N.W.2d at 792 (considering objected-to evidentiary errors and unobjected-to prosecutorial misconduct in a cumulative-error analysis).

We previously concluded that there were three evidentiary errors at Soderbeck's trial: (1) the admission of testimony from the arresting officer regarding his concern for his safety while he searched for Soderbeck; (2) the admission of evidence that Soderbeck refused to voluntarily provide a sample of his DNA for analysis, and (3) the admission of testimony from the interviewing officer that Soderbeck made threatening comments during his in-custody interview. *Soderbeck*, 2015 WL 3822892, at \*6-9. We did not decide whether the district court erred by admitting evidence that the firearm in Soderbeck's bedroom was loaded because Soderbeck did "not explain how admission of [that] testimony affected his substantial rights." *Id*. at \*6-7; *see State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (stating that an appellate court may review an issue not raised in the district court if there was plain error affecting substantial rights and that under this standard, we consider (1) whether there was an error, (2) whether such error was plain, and (3) whether it affected the defendant's substantial rights). For the purpose of our cumulative-error analysis on remand, we assume without deciding that admission of the loaded-firearm evidence was error, bringing the total number of trial errors to four.

3

"An appellant is entitled to a new trial if . . . errors, when taken cumulatively, had the effect of denying appellant a fair trial." *State v. Jackson*, 714 N.W.2d 681, 698 (Minn. 2006) (quotation omitted)). When determining whether cumulative error denied a defendant a fair trial, "reviewing courts balance the egregiousness of the errors against the weight of proof against the defendant." *State v. Swinger*, 800 N.W.2d 833, 840-41 (Minn. App. 2011), *review denied* (Minn. Sept. 28, 2011).

*Egregiousness of the Errors*

We consider the egregiousness of the errors in this case in light of the supreme court's decisions in *Bustos*, *Mayhorn*, and *Strommen*, consistent with the supreme court's remand instructions. *See State v. Soderbeck*, No. A14-1275 (Minn. Sept. 15, 2015) (order).

In *Bustos*, the supreme court determined that the district court erred by precluding defense counsel from arguing that the state failed to prove any alleged prior domestic-abuse incident beyond a reasonable doubt and by providing a broader definition of "domestic abuse" in its jury instruction than set forth in statute. 861 N.W.2d at 657, 663. In determining whether the errors, taken cumulatively, affected Bustos's substantial rights, the supreme court reasoned that "[b]oth errors related to the jury's determination of the same element: whether Bustos engaged in a past pattern of domestic abuse" and that because the "record does not contain overwhelming evidence of a pattern of domestic abuse and Bustos contested the existence of a pattern of domestic abuse at trial," it is reasonably likely that the errors had a significant effect on the verdict. *Id.* at 663. The supreme court said that "because of the interrelatedness and serious nature of the errors," a new trial was "necessary to ensure fundamental fairness." *Id.* at 665. The supreme court emphasized

4

that "[p]rohibiting counsel from arguing that the State has failed in its essential duty to prove a defendant's guilt beyond a reasonable doubt is *no ordinary error*." *Id.* at 664 (emphasis added).

The evidentiary errors in this case are not as egregious as the errors in *Bustos*. Here, the district court did not prohibit defense counsel from arguing that the state failed to prove the defendant's guilt beyond a reasonable doubt. Moreover, there was no interrelated instructional error at Soderbeck's trial.

In *Mayhorn*, the supreme court found numerous errors including (1) admission of evidence regarding an irrelevant phone call, (2) admission of evidence regarding a prior bad act, (3) the prosecutor's comments regarding Mayhorn's credibility, (4) the prosecutor's appeal to the passions of the jury, (5) the prosecutor's comments regarding Mayhorn's failure to call a witness, (6) the prosecutor's intentional misstatement of evidence, (7) the prosecutor's use of a "were they lying" question, (8) the prosecutor's reference to threats not in evidence, (9) the prosecutor's alignment of herself with the jury, (10) the prosecutor's improper attack on Mayhorn's character, (11) the prosecutor's comments regarding Mayhorn's opportunity to tailor his testimony, and (12) the prosecutor's comments regarding the credibility of a witness. 720 N.W.2d at 779.

The supreme court acknowledged that "[t]he state had a strong case against Mayhorn," but emphasized that "even the strongest evidence of guilt does not eliminate a defendant's right to a fair trial." *Id.* at 791. The supreme court explained that because of "the number of errors and the seriousness of some of them," it was "unable to determine whether the jury based its verdict on the admissible evidence and the reasonable inferences

derived therefrom, or on the state's pervasive misconduct and the consideration of evidence that should have been excluded" and that "the cumulative effect of the prosecutorial misconduct and evidentiary errors" therefore denied Mayhorn a fair trial. *Id.* at 792.

*Mayhorn* is readily distinguishable from this case given the sheer number of errors and the unprecedented prosecutorial misconduct in *Mayhorn*. *See id.* at 791-92 (describing the prosecutorial misconduct as "pervasive" and "unprecedented"). The four evidentiary errors in this case pale in comparison to the 12 errors in *Mayhorn*. Moreover, Soderbeck does not assert that the prosecutor in this case engaged in misconduct.

In *Strommen*, the supreme court identified three trial errors: (1) the admission of evidence regarding Strommen's prior interactions with police and prior misconduct, including "testimony about [him] kicking in doors and killing someone"; (2) the district court's failure to instruct the jury regarding accomplice testimony; and (3) the prosecutor's misstatements regarding the state's burden of proof and the law of abandonment. 648 N.W.2d at 682, 686-88. The supreme court concluded that the "erroneous admission of testimony relating to Strommen's other bad acts and interaction with the police" substantially affected the verdict and that based on those errors, he did not receive a fair trial. *Id.* at 688. After deciding that a new trial was necessary, the supreme court noted that the district court erred by failing to instruct the jury regarding accomplice testimony and that the prosecutor misstated the state's burden of proof and the law of abandonment. *Id.* at 689-90. The supreme court noted that these additional errors supported its conclusion that the defendant was denied a fair trial. *Id.* at 690.

The errors in *Strommen* were more egregious than those in this case. The improperly admitted other-crimes evidence in *Strommen* included testimony that Strommen had killed someone. *Id.* at 686-87. The improperly admitted evidence in this case did not suggest that Soderbeck had previously committed a crime as serious as murder. Moreover, the evidentiary errors in this case were not exacerbated by incomplete jury instructions or misstatements of law by the prosecutor.

In sum, the evidentiary errors in this case are not egregious compared to those in *Bustos*, *Mayhorn*, and *Strommen*.

*Weight of the Proof*

As to the weight of the evidence against Soderbeck, the testimony of D.S. and A.S. strongly supports the terroristic-threats convictions. D.S. testified that Soderbeck twice told her that he wanted to kill her or murder her and that she was "in fear of [her] life and [her] grandson's life." A.S. testified that Soderbeck told him, "I'm going to kill ya" and then turned to D.S. and said, "I'm going to kill both of you." A.S. also testified that Soderbeck's comments surprised him and "kind of got [him] scared."

Although the firearm possession count was proved with circumstantial evidence, the circumstantial evidence was strong. D.S. testified that she found a shotgun in a closet in Soderbeck's bedroom—a room that he did not share with anyone else—and a forensic scientist from the Minnesota Bureau of Criminal Apprehension testified that Soderbeck could not be excluded as a contributor to DNA found on the shotgun's grip and stock, trigger and bolt action, and shotshell holder.

*Conclusion*

7

In conclusion, the four evidentiary errors in this case are not egregious compared to the errors in *Bustos*, *Mayhorn*, and *Strommen*. Moreover, there is strong evidence of Soderbeck's guilt. We also consider the extent to which the prosecutor in this case emphasized the erroneously admitted evidence in his closing argument. *See Mayhorn*, 720 N.W.2d at 785 (noting that "the state made numerous references to the erroneously-admitted shoot-out evidence," including "once during closing argument and once during its rebuttal to [the defendant's] closing argument"). Although the prosecutor argued that Soderbeck's refusal to voluntarily provide a DNA sample was "unusual," the prosecutor did not argue that Soderbeck's refusal indicated guilt. And although the prosecutor referred to the shotgun as "loaded" and to Soderbeck's threatening statement during his in-custody interview, the overwhelming majority of the prosecutor's closing argument explained why the properly admitted evidence proved Soderbeck's guilt beyond a reasonable doubt.

We recognize that the evidentiary errors were somewhat prejudicial. But "a defendant is entitled to a fair trial, not a perfect trial." *Danforth v. State*, 761 N.W.2d 493, 499 (Minn. 2009). Reversal based on the cumulative effect of trial errors normally occurs in cases involving trial errors more serious than the evidentiary errors here. *See State v. Peterson*, 530 N.W.2d 843, 848 (Minn. App. 1995) (concluding that the cumulative effect of the following errors required reversal: district court instructed jury to continue deliberating until it reached a unanimous verdict; appellant's confrontation rights were violated; and prosecutor engaged in misconduct during closing argument, which turned *Spreigl* evidence into improper substantive evidence). On balance, we hold that the

cumulative impact of the four evidentiary errors in this case did not result in an unfair trial warranting reversal. We therefore affirm.

**Affirmed.**