**STATE of Minnesota, Respondent,**

**v.**

**Detroit DAVIS, Jr., Appellant.**

**No. A06–1481.**

Supreme Court of Minnesota.

July 19, 2007.

---

John M. Stuart, State Public Defender, Susan J. Andrews, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Lori Swanson, Attorney General, St. Paul, MN, Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

PAGE, Justice.

A Hennepin County jury found appellant Detroit Davis, Jr., guilty of first-and second-degree murder in violation of Minn. Stat. §§ 609.185(a)(3) and 609.19, subd. 2(1) (2006), respectively, for the shooting death of Richard Allan; second-degree murder in violation of Minn.Stat. § 609.19, subd. 2(1), for the shooting death of Pablo Morocho; and attempted aggravated robbery in violation of Minn.Stat. § 609.245, subd. 1 (2006).[1] The jury returned a not-guilty verdict on the charge of first-degree murder in the death of Morocho.

In this direct appeal, Davis first argues that the district court erred when it admitted evidence of five of his previous felony convictions for impeachment purposes pursuant to Minn. R. Evid. 609. In making this argument, Davis asks that we alter the analysis we set out in State v. Jones, 271 N.W.2d 534 (Minn.1978), for determining the admissibility of evidence of a defendant's previous convictions and consider only the similarity of the past crime with the charged crime, the importance of the defendant's testimony, and the centrality of the credibility issue. He contends that under this altered analysis, it is clear that the probative value of the evidence of his previous convictions was outweighed by its prejudicial effect. Davis also argues that the prosecutor committed prejudicial misconduct by cross-examining Davis in such a way as to suggest that Davis's testimony was suspect because he had exercised his right to be present at trial. Finally, Davis argues that the prosecutor committed prejudicial misconduct by improperly belittling his self-defense claim. While we conclude that the prosecutor's cross-examination of Davis, which suggested that Davis's presence at trial allowed Davis to tailor his testimony to fit the evidence, constituted misconduct, we also conclude that the misconduct did not affect Davis's substantial rights. We further conclude that the evidence of Davis's previous convictions was properly admitted and that the prosecutor's closing argument did not belittle Davis's self-defense claim. Therefore, we affirm Davis's convictions.

The record indicates that the police, responding to a 911 call on the morning of August 8, 2005, discovered the bodies of Allan and Morocho face down on the floor of Allan's office in south Minneapolis. Blood, some of which was eventually determined to match Davis's DNA profile, had been dripped and smeared in various places throughout the room. A metal pipe was discovered near the body of Morocho. A bag containing about $11,000 was found near Allan's head.

---

1. Davis was sentenced to life imprisonment for the first-degree murder of Allan and to 240 months for the second-degree murder of Morocho, to be served consecutively. The district court held that Davis's convictions for second-degree murder for the death of Allan and for attempted aggravated robbery merged with the other two offenses, and no sentences were imposed.

An autopsy revealed that Allan had been shot in the upper left chest and that this wound caused his death. Burn marks at the site of the wound indicated that the shot was fired at a distance of a few inches to a few feet. The autopsy also indicated that Allan had suffered a number of injuries consistent with a struggle before his death. Those injuries included a series of scalp lacerations and a skull fracture, all of which appeared to be the result of blunt force trauma, possibly from being struck with the muzzle of a gun. Allan also had a bruise on the right side of his chest, contusions on his arms, and superficial abrasions on his knees.

Morocho's death was caused by a gunshot wound to the right chest. Burn marks around the chest wound indicated that the shot was fired at a distance of a few inches to no more than three feet. A second bullet had passed through Morocho's shoulder.

At trial, Davis testified on his own behalf and asserted a claim of self-defense. In his testimony, Davis admitted that he shot and killed Allan and Morocho during a botched attempt to rob Allan, who was known to keep large sums of cash at his office. An accomplice suggested the robbery and agreed to ensure that the door to Allan's construction business would be unlocked when Davis arrived. Davis planned to enter the building, quickly get Allan to give him money from the business's safe, and exit the building. Another accomplice was to act as a lookout.

Davis testified that on the morning of August 8, 2005, he entered Allan's office carrying a loaded handgun. Davis said that, when Allan saw him enter, Allan jumped up from his desk and attacked

him. A struggle ensued, and Davis struck Allan a number of times with the gun. At some point, Davis left Allan and went to the room where the safe, which was open, was located. Davis testified that he picked up a bag that felt as if it had money in it and stepped out of the safe room, at which point Allan attacked him again. According to Davis, he threw the money down, intending to escape, and said "you got your money. Just let me go." Allan would not release him, however, and Morocho then came to Allan's aid. Davis testified that Morocho started hitting him in the head with a metal pipe, causing both Davis and Allan to fall to the floor. Davis stated that Morocho continued to hit him with the pipe while he tried to block the blows and while Allan urged Morocho to "kill him." Davis claimed that he shot both men in order to end the assault and save his own life. Davis then fled the building, leaving the bag of money behind.

During trial, the court heard arguments regarding whether evidence of nine felony offenses for which Davis had been convicted was admissible for impeachment purposes pursuant to Minn. R. Evid. 609. Defense counsel objected to the admission of the evidence, arguing that some of the nine convictions were outside the ten-year period set out in the rule, that the offenses had limited impeachment value, that the evidence was more prejudicial than probative, and that, if the evidence of the offenses was found to be admissible, that finding would have a chilling effect on Davis's willingness to testify on his own behalf. The district court found that five of the convictions were admissible under Rule 609 and that the probative value of the evidence outweighed its potential for prejudice.[2] The district court made it clear

---

**2.** The court determined that, while one of these convictions was more than ten years old, Davis was released from incarceration for that conviction within the preceding decade, thereby bringing that conviction within the general provisions of Rule 609. *See* Minn.

that the jury would be instructed on the proper use of the evidence.

In his direct testimony, Davis testified to having been convicted of the five offenses the district court found admissible: third-degree burglary in 1993, third-degree attempted burglary in 1998, fleeing a peace officer in 1999, third-degree burglary in 2001, and attempted fifth-degree drug possession in 2004. At the close of trial, the district court gave the appropriate cautionary instruction limiting the jury's use of these convictions.

During cross-examination, the prosecutor asked Davis a series of questions that suggested that Davis's testimony was not credible because he had access to the discovery materials in his case and had heard all the evidence presented against him during the trial, which gave Davis an opportunity to tailor his story to that evidence. That exchange took place as follows:

Q: You, as part of the discovery in this case, had all the police reports and all the information pertaining to this case provided to you, correct?

A: Yes, I did.

Q: And you had an opportunity to read all of that material, correct?

A: Yes.

Q: And you sat in court here throughout these proceedings, correct?

A: Yes.

Q: And listened to all the testimony?

A: Yes.

Q: And all the other witnesses were what was called sequestered. They couldn't listen to each other, correct?

A: Yes.

Q: And you've had ample opportunity to think about this matter and review all the reports since August 8th of 2005, correct?

A: Yes.

Davis did not object to these questions.

During closing argument, the prosecutor attacked the veracity of Davis's testimony and in doing so twice called Davis's account of the killings "preposterous." The prosecutor also argued that a self-defense claim was not available to an armed robber who encounters resistance from his victims. Specifically, the prosecutor argued that "[t]he law does not encompass th[e] kind of anarchy" that "Davis [was] attempting to sell." Davis did not object during the prosecutor's closing. During his own closing argument, Davis claimed he killed Morocho and Allan in self-defense, and the court gave the jury a self-defense instruction.

## I.

■ We review a district court's decision to admit evidence of a witness's previous convictions for impeachment purposes for an abuse of discretion. *State v. Swanson,* 707 N.W.2d 645, 654 (Minn.2006). Minnesota Rule of Evidence 609 reads in part:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial

R. Evid. 609(b) (providing that convictions fall outside the general provisions of the rule if "a period of more than ten years has elapsed since the date of the conviction *or of*

*the release of the witness from the confinement imposed for that conviction, whichever is the later date"* (emphasis added)). Davis does not challenge this finding.

effect, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

When considering whether the probative value of admitting evidence of a conviction outweighs its prejudicial effect, we have indicated that it is appropriate to consider five factors:

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach [because there is a greater potential for prejudice] ), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Jones,* 271 N.W.2d at 537–38; *see also State v. Ihnot,* 575 N.W.2d 581, 586 (Minn. 1998) ("Although *Jones* was decided before Rule 609 became effective, we conclude that these factors remain suitable and we reaffirm their application in determining whether the probative value outweighs the prejudice under the rule."). Regarding impeachment value, we have held that evidence of prior convictions generally has some impeachment value because it allows the jury "to see the whole person and thus to judge better the truth of [the witness's] testimony." *Ihnot,* 575 N.W.2d at 586 (internal citation omitted). We consider recent convictions to have more probative value than older ones, and recent convictions can enhance the probative value of older convictions by placing them within a pattern of lawlessness, indicating that the relevance of the older convictions has not faded with time. *See id.* In addition, it is error for a district court to fail to make a record of its consideration of the *Jones* factors, though the error is harmless if it is nonetheless clear that it was not an abuse of discretion to admit evidence of the convictions. *Swanson,* 707 N.W.2d at 655.

■ In this case, the district court heard extensive argument about application of the *Jones* factors to Davis's nine previous felony convictions. The court ultimately admitted evidence of five convictions that fell within the preceding ten-year period and excluded evidence of four convictions that fell outside that period. When the court made its ruling, it noted the importance of Davis's credibility to the outcome of the case and specifically found that the probative value of the five convictions outweighed the potential for unfair prejudice.

Applying the *Jones* factors to the five convictions the district court found admissible, we conclude that the district court did not abuse its discretion in determining that the probative value of the convictions outweighed the potential for unfair prejudice. As the district court observed, the viability of Davis's self-defense claim turned largely on facts that only he could testify to, thus his credibility was central to the case. Moreover, we note that the court's ruling on the admissibility of the evidence of Davis's previous convictions did not prevent Davis from testifying. We also note that the similarity between the past convictions and the charged offenses was not so great as to preclude their admission. The potential for prejudice was also reduced by the fact that Davis admitted his involvement in the attempted rob-

bery and the deaths of Allan and Morocho, leaving for the jury only the question of Davis's intent when he killed the two men. Further, each of the admitted convictions fell within the ten-year time period set out in the rule, and, when viewed together, they evidence a pattern of lawlessness that tends to mitigate the passage of time. Finally, under our case law it is clear that evidence of Davis's convictions would have been helpful to the jury's understanding of Davis's "whole person."

■ Davis argues that, even if the district court did not abuse its discretion when it applied the *Jones* factors, we should reconsider those factors and alter our Minn. R. Evid. 609 analysis. Specifically, Davis claims that it is improper to consider a conviction's impeachment value as counting in favor of admission under Rule 609 because we have already determined that all convictions have some impeachment value. In addition, he claims that, because Rule 609 already takes into account timeliness by establishing that convictions more than ten years old are presumptively inadmissible, it is improper to consider timeliness as an additional factor in favor of admission. Davis argues that, when his convictions are analyzed without these two considerations, it is clear that the district court abused its discretion because the convictions are only "marginally probative of [his] truthfulness, but highly probative of his bad character." The state, among other things, contends that Davis's argument that we should reconsider the *Jones* factors and alter our Rule 609 analysis is not properly before us because it was not raised at the district court and therefore cannot now be raised on appeal.

We agree with the state. In *Swanson*, we declined to "revisit Minn. R. Evid. 609 and the use of prior convictions as impeachment evidence[ b]ecause [the appel-

lant] did not make this argument before the district court." 707 N.W.2d at 656. Here, as in *Swanson*, the argument is raised for the first time on appeal. As in *Swanson*, we decline to consider it in this appeal.

## II.

■ Next, we address Davis's contention that the prosecutor committed prejudicial misconduct by asking him a series of questions that attacked his credibility based on his presence at trial. Davis claims that our decision in *Swanson* makes clear that such questions are improper. The right to be present at trial is protected by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. *Swanson*, 707 N.W.2d at 657. In *Swanson*, we held that, absent specific evidence that a defendant has actually tailored his or her testimony to fit the evidence, it is misconduct for a prosecutor to imply that a defendant is less believable because he or she has exercised the right of confrontation. *Id.* at 657–58. The state contends that the "prosecutor may have inferred in good faith that there was, in fact, evidence to support an inference of fabrication," i.e., it is not plausible that an unarmed and injured Allan attacked Davis despite an opportunity to escape. In the alternative, the state argues that Davis did not suffer any prejudice as a result of the questions.

■ Because Davis did not object to any of the questions, our review is for plain error. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006). "An error is plain if it [is] clear or obvious," and "[u]sually this is shown if the error contravenes case law, a rule, or a standard of conduct." *Id.* (internal citation omitted). If plain error is proven, then, in the context of prosecutorial misconduct, the burden shifts to the state to show that the defendant's substantial rights were not affected. *Id.* Prosecu-

torial misconduct affects substantial rights if there is a reasonable likelihood that the absence of misconduct would have had a significant effect on the jury's verdict. *Id.* In assessing whether there is a reasonable likelihood that the absence of the misconduct would have had a significant effect on the jury's verdict, we consider the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions. *See, e.g., State v. Dobbins,* 725 N.W.2d 492, 513 (Minn.2006); *State v. Mayhorn,* 720 N.W.2d 776, 790–91 (Minn.2006); *Swanson,* 707 N.W.2d at 658; *State v. Buggs,* 581 N.W.2d 329, 341 (Minn. 1998). If the state fails to demonstrate that substantial rights were not affected, "the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998).

Clearly, the questions the prosecutor asked Davis on cross-examination, which are at issue here, implicate a criminal defendant's confrontation rights. *Cf. Swanson,* 707 N.W.2d at 657–58. In our view, they also implicate a defendant's right to be present at every stage of trial and the right to present a defense. *Cf. id.* Thus, absent evidence in the record from which it can be inferred that Davis tailored his testimony to fit the evidence, asking the questions constituted prosecutorial misconduct. *See id.* Based on our review of the record, we conclude that the record is devoid of any evidence from which it could be inferred that Davis tailored his testimony to fit the evidence. Thus, given our case law, we also conclude that the prosecutor's questions constituted plain error.

Notwithstanding our conclusion that the prosecutor engaged in misconduct, we also conclude that the state has met its burden, as set out in *Ramey,* of showing that the misconduct did not affect Davis's substantial rights. In this case, the evidence against Davis was substantial and compelling and included his admission that he had shot Allan and Morocho during an attempt to rob them. Further, the prosecutor's improper suggestions were not pervasive, covering less than one of the 64 pages of the transcript containing Davis's testimony. Moreover, the suggestion that Davis tailored his testimony to fit the evidence was not repeated in the state's closing argument or elsewhere. Finally, our conclusion that the misconduct did not affect Davis's substantial rights is supported by the fact that the jury apparently credited some of Davis's testimony with respect to the shooting of Morocho and found Davis not guilty of first-degree murder for Morocho's death.

### III.

Davis also contends that the prosecutor committed prejudicial misconduct in closing argument by "call[ing Davis's] testimony 'preposterous' and [by arguing] that the 'law does not encompass [the] kind of anarchy' [Davis] was 'trying to sell' with his self-defense claim." Davis contends these portions of the prosecutor's closing argument improperly belittle Davis's defense. Because Davis did not object to the prosecutor's comments, our review is, as discussed previously, for plain error. *Ramey,* 721 N.W.2d at 302.

The state has a right to vigorously argue its case, and it may argue in individual cases that the evidence does not support particular defenses. *State v. MacLennan,* 702 N.W.2d 219, 236 (Minn. 2005). Further, the state's argument is not required to be colorless. *State v. Bolstad,* 686 N.W.2d 531, 544 (Minn.2004). But the state "may not belittle the defense,

either in the abstract or by suggesting that the defendant raised the defense because it was the only defense that may be successful." *MacLennan*, 702 N.W.2d at 236. Moreover, we have held that a prosecutor commits misconduct if he "call[s] a type of defense 'soddy,' or * * * suggest[s] that jurors would be 'suckers' if they believed the defense." *State v. Johnson*, 616 N.W.2d 720, 730 (Minn.2000) (internal citations and emphasis omitted).

In this case, the prosecutor did not belittle Davis's claim of self-defense generally or suggest that the self-defense claim was raised only because Davis had no other options. Instead, when the statements are viewed in context, it is apparent that the prosecutor was making arguments about the merits of Davis's self-defense claim in this case and about what the law requires to establish such a claim. While the prosecutor's arguments were at times expressed in colorful terms, we conclude that the arguments did not constitute error and thus did not involve misconduct.

Affirmed.