*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0550**

State of Minnesota,
Respondent,

vs.

Daniel Thomas Labarre,
Appellant.

**Filed February 2, 2015
Affirmed
Rodenberg, Judge**

Ramsey County District Court
File No. 62-CR-13-6748

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

# U N P U B L I S H E D   O P I N I O N

**RODENBERG**, Judge

Appellant Daniel Labarre challenges his conviction for fleeing a police officer by motor vehicle, arguing that the district court erred in admitting hearsay and *Spreigl*

evidence and that the state committed prosecutorial misconduct. Appellant also argues that the cumulative effect of these errors requires reversal. We affirm.

## FACTS

In the early afternoon of September 3, 2013, four officers in the St. Paul Police Department's Focusing Our Resources on Community Enforcement (FORCE) unit were patrolling in an unmarked sports-utility vehicle (SUV) on Edgerton Avenue in east St. Paul. Two of the St. Paul police officers were the only witnesses at trial. Officer Bilek testified that he was driving the SUV and that, as he drove southbound on Edgerton Avenue, the officer in the front passenger seat, Officer Dunaski, "observed the defendant . . . I believe he said he was on a motorcycle." Officer Bilek also testified that he "saw a white male on a motorcycle, on the sidewalk -- like the sidewalk going up to the house." Officer Bilek later testified that the man he saw was appellant. The officers were aware that there was an outstanding warrant for appellant's arrest.

Officer Bilek turned the SUV around to approach appellant. Officer Bilek testified that, after he turned around and while traveling northbound on Edgerton, the man on the motorcycle began to drive away, also northbound on Edgerton. Officer Bilek then activated his emergency lights and siren. The motorcycle did not stop. It accelerated. Officer Bilek testified that his vehicle was "within maybe 30 yards" of the motorcycle but the motorcycle then "really, really accelerated past us [at an] estimated speed to be about 50 to 60 miles an hour as we tried to close distance." Officer Bilek testified that he followed the motorcycle northbound on Edgerton until ending the chase near Larpenteur Avenue because Officer Bilek was concerned about public safety, he was

confident that the man was appellant, and the man had entered Maplewood, another jurisdiction.

St. Paul police arrested appellant later that night. Appellant was charged with one felony count of fleeing a police officer in a motor vehicle in violation of Minn. Stat. § 609.487, subd. 3 (2012). At trial, the identity of the man on the motorcycle was the principal issue in dispute.

Officer Dunaski's trial testimony largely corroborated Officer Bilek's testimony. He testified that his job at the time involved regularly reviewing active arrest warrant lists to "see who the current wanted people are before I go out on my shift." Officer Dunaski testified that he saw appellant's name and photo on the active-warrant list on the morning of September 3, that he knew who appellant was and what he looked like, and that he had interacted with appellant "at least 10, 12 times."

At trial, appellant objected on hearsay grounds when Officer Bilek testified that Officer Dunaski "looked at the residence and observed the defendant . . . I believe he said he was on a motorcycle." After this objection, the prosecutor said, "So let me stop you there" and asked Officer Bilek, "So he observed somebody in the yard?" and continued with questioning. The district court never ruled on the objection. During Officer Dunaski's examination, appellant did not object to similar testimony when Officer Dunaski stated, "One of the guys in the car said, 'That's Danny LaBarre [sic], Danny Boy on his motorcycle.'"

Appellant also objected, without providing grounds for the objection, when Officer Dunaski appeared to start providing the reason for the arrest warrant for

3

appellant: "Q: . . . there was an active warrant for the arrest of Daniel LaBarre [sic]? A: Yes, he was -- he was wanted previously for a previous –[.]" The district court responded to the objection, stating, "Just answer the question, please," and the witness responded, "Yes." The district court then stated, "It was a yes or no question." Appellant also objected when the prosecutor asked Officer Dunaski how many times he had interacted with appellant. The district court overruled the objection.

Appellant also objected on relevance grounds to Officer Bilek's testimony that he and the other officers were "check[ing] on . . . one of our addresses we know to be a problem property." The district court overruled the objection.

During summation, the prosecutor made four statements that appellant claims amount to prosecutorial misconduct. The first such statement is:

> We have testimony from two officers that told you what happened that day. The officers who knew the defendant, who saw him that day and who saw him flee.
>
> We have the word of the officers telling you what happened that day. And if you believe them, then we have enough evidence to convict the defendant.

The next three statements, made at the beginning of the prosecutor's rebuttal argument, are:

> *All these cops were shady characters, weren't they*? They have a lot to think of up here and a lot to go after the defendant with apparently. The conspiracy theory that they're out to get him.
>
> Does it sound like they were out to get him or did they sound like a couple of cops who were just out doing their job? *They were just telling you what they saw* because there weren't embellishments. They didn't have every single little detail about it because we don't have squad video telling us

4

what exactly happened. *What we have is officers telling you what happened.*

In contrary to the defense's assertions, *I would say that their testimony was clear, it was consistent and it was compelling about what happened that day*.

(Emphasis added to identify the portions of which appellant complains).

The jury found appellant guilty, and he was sentenced to serve 22 months in prison. This appeal followed.

## D E C I S I O N

Appellant argues that evidence of the arrest warrant for appellant and of his prior contacts with the officers was improperly admitted *Spreigl* evidence. Appellant argues that we should review for an abuse of discretion because he objected to these statements at trial. *See State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (stating that "[e]videntiary rulings rest within the sound discretion of the [district] court" and that we will not overturn "absent a clear abuse of discretion"). But because appellant did not identify Minn. R. Evid. 404(b) as the basis of his objection, we review for plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (stating that unobjected-to errors are reviewed under the plain-error test). Under a plain-error review, appellant must show an "(1) error; (2) that is plain; and (3) the error must affect substantial rights." *Id.*

Appellant argues on appeal that evidence of appellant's arrest warrant and of his prior contacts with police officers was inadmissible as bad-acts evidence under rule 404(b). This argument was not raised in the district court. Respondent maintains that the

5

evidence was necessary to prove an element of the charged crime: that the police were acting in the lawful discharge of their official duty.

To prove that appellant violated Minn. Stat. § 609.487, subd. 3, the state was required prove that (1) appellant fled from police officers by motor vehicle; (2) the police officers were acting in the lawful discharge of an official duty; (3) appellant knew or reasonably should have known that he was fleeing from police officers; and (4) the incident took place on September 3, 2013 in Ramsey County. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. "Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). Evidence of prior crimes or bad acts, or *Spreigl* evidence, may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

Appellant objected to Officer Dunaski's response to the question of whether there was an active warrant for appellant, but did not identify the basis for the objection. The objection was made after Officer Dunaski had answered that there was a warrant and appears to have begun to answer another question that had not been asked concerning why the warrant had been issued. The district court directed the witness to answer the question that had been asked, and the witness stated, "Yes." Apparently satisfied that the witness had followed its instruction, the district court stated, "It was a yes or no question." Appellant made no further record to clarify his objection to more broadly

6

include the testimony that a warrant existed at all. Appellant argues on appeal that the district court "failed to engage in any analysis" regarding admissibility under rule 404(b). But appellant did not object under rule 404(b).

Evidence of the existence of a warrant for appellant's arrest was relevant and material to prove an element of the crime. *See* Minn. R. Evid. 401. Evidence that the warrant existed tended to prove that the police were acting in lawful discharge of an official duty in pursuing appellant on the motorcycle. The officers' belief that appellant had an active arrest warrant tended to prove that the officers were acting within their lawful duty to enforce warrants.[1] The district court properly confined Officer Dunaski's testimony to the subject of whether there was an arrest warrant for appellant. We therefore conclude that it was not plain error for the district court to decline to sua sponte exclude the evidence under rule 404(b).

We also conclude that the district court did not abuse its discretion in admitting evidence of the existence of appellant's active arrest warrant on hearsay grounds, as the evidence was not offered to prove the matter asserted. Rather, it was offered to prove that the officers were lawfully discharging their official duty to enforce warrants by acting on information that appellant had an arrest warrant. Moreover, appellant made no further record concerning the hearsay objection.[2] *See State v. Manthey*, 711 N.W.2d 498,

---

[1] Officer Dunaski testified that he spent "the last nine years doing high risk warrants," and Officer Bilek affirmatively responded to the prosecutor's question, "Is it your job to enforce warrants?"

[2] During discussion after the state rested, outside the presence of the jury, the district court asked if there was "anything else we need to put on the record at this point," and

7

504 (Minn. 2006) (stating that hearsay objections require particular attention to "the creation of a record of the trial court's decision-making process in either admitting or excluding a given statement"). "It is well to bear in mind that on appeal error is never presumed" and that "the burden of showing error rests upon the one who relies upon it." *Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949) (quotation omitted).

Appellant also argues that the evidence that Officer Dunaski had interacted with him "10, 12 times" was duplicative and inadmissible. Appellant relies on *State v. Strommen*, 648 N.W.2d 681 (Minn. 2002), to support his contention. In *Strommen*, the defendant was charged with attempted robbery of a gas station, and his defense theory was that he did not intend to rob the gas station and that when asked to leave, he did so, abandoning any effort to commit the robbery. 648 N.W.2d at 682, 684. The supreme court stated: "From a review of the record, Strommen's identification does not appear to have been the intended purpose of the questions eliciting the officer's testimony regarding 'prior contacts and incidents'" and that "the officer had been asked and had answered questions identifying Strommen as matching the general description" as the suspect. *Id.* at 687-88. The supreme court then stated: "[T]o the extent that the questions were intended to establish that the person the officer arrested was indeed Strommen, the questions were unnecessary." *Id.* at 688. The supreme court also stated that "Strommen's identity does not appear to have been an issue in this case" and that the real

---

appellant's counsel answered, "I know I had some objections and the Court sustained some and overruled others, but I have no specific record to make in that regard."

8

purpose of the offending questions was to suggest that "Strommen was a person of bad character who had frequent contacts with the police." *Id.*

Here, however, the identity of the driver of the motorcycle was a disputed element at trial. The number of prior contacts these officers had with appellant is material and relevant to the question of whether the officers knew appellant sufficiently to identify him as the man on the motorcycle. Evidence of the number of times the officers had interacted with appellant tends to prove that the officers were able to recognize appellant from their vehicle. Admission of the prior-contact testimony was not plainly erroneous.

Appellant also argues that "prior interactions" connotes "run-ins" with the officers and that the jury would have presumed the contacts were evidence of prior bad acts. But there was no evidence or argument concerning appellant's role in these interactions. Neither we nor the jury know from this record whether any or all of appellant's contacts with these specific officers were for crimes or bad acts. We conclude that the district court did not err in admitting evidence that the officers had prior interactions with appellant.

Appellant also argues that the district court erred in admitting hearsay evidence concerning what various officers in the SUV said. And, while appellant objected to Officer Bilek's testimony that Officer Dunaski "observed [appellant] in the -- in the yard," he did not object to Officer Dunaski's testimony that another officer stated: "That's Danny LaBarre [sic], Danny Boy on his motorcycle." On appeal, appellant does not challenge the admission of the first statement from Officer Bilek on hearsay grounds. Because there was no objection to Officer Dunaski's testimony regarding the

9

identification of appellant, we review the admission of that testimony for plain error. *Griller*, 583 N.W.2d at 740.

Hearsay evidence is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay is generally inadmissible unless an exception exists in rule or statute. Minn. R. Evid. 802. Respondent argues that the officers' testimony concerning the warrant was not offered for the truth of the matter asserted but rather as evidence that the police officers *believed* that the person on the motorcycle was appellant, who had a warrant for his arrest. Appellant argues that, because the district court did not provide a limiting instruction, the statement was offered as a statement supporting the truth of the matter asserted. We see no plain error where, as here, the evidence in question was not objected to, and had an evident non-hearsay purpose.

Appellant also argues that the district court plainly erred in allowing Officer Dunaski to testify that another officer in the car stated: "That's Danny LaBarre [sic], Danny Boy on his motorcycle." As with the testimony concerning the warrant, this evidence had a non-hearsay purpose: proving that police believed the person on the motorcycle to be appellant, for whom an arrest warrant had been issued, and tending to prove that the officers were therefore lawfully discharging their duties in pursuing him. We conclude that the district court did not plainly err in declining to strike the testimony sua sponte. *See State v. Vick*, 632 N.W.2d 676, 687 (Minn. 2001) (stating that "failure to sua sponte strike or instruct is not [ordinarily] reversible error"). Even if we did conclude that the statement was offered to prove that appellant was the man on the motorcycle, the

10

state may have argued one or more exceptions to the rule against hearsay. It did not have the chance to do so as appellant's trial counsel never made the objection. We cannot conclude that error, if any existed, was plain. *See Strommen*, 648 N.W.2d at 688 (stating that an error must be clear or obvious to be plain).

Appellant next argues that the prosecutor committed misconduct during summation. Appellant concedes that he did not object to these statements at trial. We therefore review under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). This two-tiered test requires appellant to first establish that the prosecutor committed plain error, one that contravenes caselaw, a rule, or a standard of conduct. *Id.* If appellant makes this showing, the burden shifts to the state to demonstrate that its misconduct did not affect appellant's substantial rights. *Id.* When misconduct is demonstrated, we consider whether an appellant's substantial rights have been affected. *See State v. Porter*, 526 N.W.2d 359, 365 (Minn. 1995); *see also State v. Reed*, 737 N.W.2d 572, 583 (Minn. 2007) ("The 'affects substantial rights' language of the third plain error factor is the same language used to define harmless error.").

It is prosecutorial misconduct for the prosecutor to "bolster the credibility of the state's witnesses with the prosecutor's own opinion." *State v. Hobbs*, 713 N.W.2d 884, 888 (Minn. App. 2006), *vacated in part on other grounds* (Minn. Dec. 12, 2006). But "[m]erely arguing that the witness has no interest in the case . . . is not interjecting the prosecutor's opinion into the credibility analysis." *Id.* at 889. When reviewing for prosecutorial misconduct in the summation, we consider the argument as a whole. *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003).

Appellant argues that the prosecutor improperly endorsed the witnesses' credibility. Respondent maintains that the statements are not prosecutorial misconduct when examined in the context of the full closing argument. The statements include the prosecutor's statements that the officers "told you what happened that day" and that they "were just telling you what they saw" and "telling you what happened that day." The prosecutor also stated that, "I would say that their testimony was clear, it was consistent and it was compelling about what happened that day."

Appellant cites *Hobbs* to support his argument that statements from the prosecutor that the officers "were just telling you what they saw" and "telling you what happened that day" constitutes prosecutorial misconduct. In *Hobbs*, the prosecutor stated that one of the officers "told you what she saw, what happened" and we concluded that this was improper. 713 N.W.2d at 889; *see also State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984) (concluding that "portions of the final argument of the prosecutor endorsing the credibility of the state's witnesses and injecting personal opinion as to defendant's credibility were clearly improper").

While the prosecutors' statements in *Hobbs* and *Ture* were deemed to be misconduct, context is important and unique in each case. *See Powers*, 654 N.W.2d at 679. Upon review, in context of the closing argument and rebuttal, the prosecutor's comments here appear to be explanatory and arguing inferences from the testimony at trial. Specifically, the statements that the officers "told you what happened that day" and that they "were just telling you what they saw" fairly characterize the officers' testimony as arising from routine, professional observations. The officers' testimony was the only

12

evidence available, as there was no squad video or physical evidence. The prosecutor began her closing argument by stating, "The evidence in this case is not complicated, it's not extensive. We have testimony from two officers that told you what happened that day. The officers who knew the defendant, who saw him that day and who saw him flee. That's the evidence . . . ." In this context, the statements were not an endorsement of credibility.

At the beginning of the prosecutor's rebuttal, she responded to appellant's attacks on the officers' credibility by saying:

> Does it sound like they were out to get him or did they sound like a couple of cops who were just out doing their job? *They were just telling you what they saw* because there weren't embellishments. They didn't have every single little detail about it because we don't have squad video telling us what exactly happened. *What we have is officers telling you what happened.*

(Emphasis added.) Appellant argues that these comments were improper and "made up a significant portion of her closing argument," citing *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007) (stating that misconduct was not pervasive when it covered less than one page of a 64-page argument). But as discussed above, the statements appear to be a legitimate effort to focus the jury's attention on the evidence in the record, and arguing that the evidence so understood was sufficient to find appellant guilty. The statements at issue, when combined, amount to approximately one page of the 11-page summation.

Even if we were to conclude that the statements were plain error, we conclude that appellant's substantial rights were not affected in any event. The evidence in this case was very strong. Officer Dunaski testified that he had been "face to face" with appellant

13

previously and that he was "one hundred percent" certain that the man on the motorcycle was appellant. This was strong evidence establishing appellant's identity. Officer Dunaski's testimony corroborated much of Officer Bilek's testimony about the subsequent chase. We cannot conclude on this record that appellant's substantial rights were affected by the prosecutor's statements in summation. The result would have been the same with or without the challenged statements.

Appellant also argues that the alleged errors, when taken together, demonstrate that he did not receive a fair trial. When "the number of errors and the seriousness of some of them" render this court "unable to determine whether the jury based its verdict on the admissible evidence and the reasonable inferences derived therefrom," we may determine that the defendant was deprived of a procedurally fair trial. *State v. Mayhorn*, 720 N.W.2d 776, 792 (Minn. 2006). To find cumulative error, we must find multiple errors that, when combined, are more prejudicial than each of the errors separately. *State v. Penkaty*, 708 N.W.2d 185, 200 (Minn. 2006).

As discussed above, we do not conclude that the district court erred. However, even if there were errors, appellant has failed to demonstrate that his substantial rights were affected or that he was deprived of a procedurally fair trial. The district court properly instructed the jury, and we presume that the jury followed these instructions. We therefore conclude that any cumulative error did not prejudice appellant.

**Affirmed.**

14