*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0216**

State of Minnesota,
Respondent,

vs.

Lonnie Bell Scott,
Appellant.

**Filed January 19, 2016
Affirmed
Bjorkman, Judge**

Dakota County District Court
File No. 19HA-CR-14-373

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Jennifer S. Bovitz, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his conviction of third-degree criminal sexual conduct, arguing that (1) the evidence was insufficient to support his conviction, (2) the district

court abused its discretion by allowing testimony that referred to him as a "pimp" and another witness as his "main girl," and (3) the district court committed prejudicial error by admitting *Spreigl* evidence. We affirm.

**FACTS**

J.C.-M. and B.H. met while working at a Minneapolis strip club in 2013. B.H. lived with appellant Lonnie Bell Scott, whom she described as her "pimp." Scott occasionally visited the strip club, and decided to "pull" J.C.-M. into working for him as a prostitute. B.H. assisted Scott by befriending J.C.-M.

One evening during the fall of 2013, B.H. brought J.C.-M. home after work. J.C.-M, B.H., and Scott drank alcohol together at the house. At some point, Scott directed B.H. to pour shots of water for the two of them, but to continue serving alcohol to J.C.-M. J.C.-M. became intoxicated and vomited after B.H. and Scott helped her to their upstairs bedroom. Although J.C.-M. was falling in and out of consciousness, Scott said he intended to have sex with her. B.H. objected; Scott responded with threatening gestures.

Scott and B.H. eventually joined J.C.-M. in bed. Scott initiated sexual contact with J.C.-M., and she told him "no." Scott then pulled down J.C.-M.'s pants and penetrated her vagina with his penis. J.C.-M. cried and repeatedly told him to stop. When B.H. protested, Scott took her into the bathroom and choked her. Scott then resumed having sexual intercourse with J.C.-M.

J.C.-M. testified that when she woke up in the morning she was fully dressed, except for her bra. She felt hungover and wet in her "private part." J.C.-M. could not

recall all that occurred on the night of the incident, but remembered Scott having sex with her on the bed, even though she told him "no" and "stop." She also remembered being naked in the bathtub with B.H. before she "knocked [her]self out."

According to B.H., Scott eventually abandoned his plan to "pull" J.C.-M. In January 2014, B.H. contacted law enforcement regarding a separate incident involving Scott and informed them about the sexual assault of J.C.-M. Both B.H. and J.C.-M. later met with Officer Sean McKnight of the Apple Valley Police Department. Prior to that meeting, B.H. described to J.C.-M. what occurred on the night in question.

Scott was charged with two counts of third-degree criminal sexual conduct. Prior to trial, B.H. obtained use-immunity for her role as an "uncharged accomplice." The district court ruled that B.H. could testify that Scott was her "pimp" and she was his "main girl." The district court instructed the state not to present any evidence regarding a separate criminal charge involving Scott and B.H. J.C.-M., her guardian,[1] B.H., and Officer McKnight testified at trial. The jury found Scott guilty of one count. Scott appeals.

**D E C I S I O N**

## I. The evidence is sufficient to support Scott's conviction because J.C.-M.'s testimony adequately corroborated B.H.'s accomplice testimony.

When considering a sufficiency-of-the-evidence argument, we ascertain whether the facts in the record and the legitimate inferences that can be drawn from those facts would permit a jury to reasonably conclude that the defendant was guilty of the charged

---

[1] J.C.-M. has mild mental retardation. She has had a court-appointed guardian since 2011.

offense. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). We view the evidence in the light most favorable to the jury's verdict, and assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Accomplice testimony is inherently suspect. *State v. Jackson*, 746 N.W.2d 894, 898 (Minn. 2008). As such, it is insufficient to sustain a conviction, unless corroborated by other evidence that "tends to convict the defendant of the commission of the offense." Minn. Stat. § 634.04 (2012). But corroborating evidence need not establish a prima facie case of guilt, *State v. Adams*, 295 N.W.2d 527, 533 (Minn. 1980), or address each element of the crime. *State v. Lemire*, 315 N.W.2d 606, 610 (Minn. 1982). Rather, the corroborating evidence must be "weighty enough to restore confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial way." *State v. Hooper*, 620 N.W.2d 31, 39 (Minn. 2000) (quotations omitted). When the sufficiency of corroborating evidence is challenged, we view such evidence in the light most favorable to the verdict, and resolve any inconsistencies in favor of the state. *State v. Pippitt*, 645 N.W.2d 87, 93 (Minn. 2002).

To sustain Scott's conviction, the state had to prove: (1) sexual penetration and (2) use of force or coercion by Scott to accomplish penetration. Minn. Stat. § 609.344, subd. 1(c) (2012). Scott does not dispute that B.H.'s testimony establishes the elements of the offense. But he contends that the evidence is insufficient because J.C.-M.'s testimony, which was based on an incomplete recollection of the incident, failed to provide sufficient corroboration. We are not persuaded. While J.C.-M.'s memory of the

incident was incomplete, undisputed elements of her testimony, by themselves, sufficiently corroborate B.H.'s testimony.

J.C.-M. testified that on the evening in question B.H. took J.C.-M. to her house where she became extremely intoxicated after drinking with Scott and B.H.; at some point, J.C.-M. found herself in the bedroom; and the next morning she woke up wearing all of her clothes, except her bra, felt hung over, and her "private part" was wet. This testimony is consistent with B.H.'s general account of the incident—Scott and B.H. provided alcohol to J.C.-M. in their home until she was extremely intoxicated, and Scott then sexually penetrated J.C.-M. against her repeated protests. While J.C.-M.'s testimony did not speak directly to Scott's use of force or coercion, it was not required to do so. *See Lemire*, 315 N.W.2d at 610 (stating that accomplice testimony need not be corroborated "on every point or element of the crime"). Because we conclude that J.C.-M.'s testimony is sufficient to restore confidence in B.H.'s accomplice testimony, the evidence is sufficient to support Scott's conviction.

## II. The district court did not abuse its discretion by admitting B.H.'s testimony that Scott was her "pimp" and she was his "main girl."

A party challenging the admission of evidence bears the burden of proving that the district court abused its discretion and that admission of the evidence was prejudicial. *State v. Amos,* 658 N.W.2d 201, 203 (Minn. 2003). Reversal is only warranted if the erroneous admission of evidence substantially influenced the jury's decision. *State v. Yang*, 774 N.W.2d 539, 554 (Minn. 2009).

5

Scott asserts that the district court abused its discretion by allowing B.H. to refer to him as her "pimp," and herself as his "main girl." Scott argues that the challenged terminology was irrelevant because he was not charged with human trafficking or promotion of prostitution, and it otherwise did not serve to prove he committed criminal sexual conduct. He also contends that the prejudicial effect of this testimony substantially outweighed its probative value because it implied that Scott was "part of a seedy criminal underworld." We disagree.

Scott's status as a "pimp" was inextricably intertwined with what B.H. identified as his motive for sexually assaulting J.C.-M.—to convince her to work for him as a prostitute. B.H.'s testimony that she was Scott's "main girl" helps explain why she complied with Scott's ongoing instructions to befriend J.C.-M. Accordingly, the challenged testimony provided context evidence regarding how and why Scott perpetrated the sexual assault, and why B.H. was initially complicit in his plan. *See State v. Kennedy,* 585 N.W.2d 385, 392 (Minn. 1998) ("Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value.").

Moreover, even if the evidence was improperly admitted, we conclude that its admission was harmless. The jury learned of Scott's ties to prostitution through B.H.'s unobjected-to testimony that Scott intended to have sex with J.C.-M. in order to "pull" her into prostitution. And the jury could have easily inferred that B.H. was involved in prostitution based on her testimony that she assisted Scott in carrying out his plan to "pull" J.C.-M. Any prejudicial effect that use of the terms "pimp" and "main girl" may

6

have had was minimized by the fact that the jury heard consistent testimony from B.H. and J.C.-M. regarding the details of the assault that directly implicated Scott. On this record, we conclude that the challenged testimony did not have a substantial effect on the jury's verdict.

**III.     The district court did not commit prejudicial error by admitting limited testimony regarding Scott's violent conduct toward B.H.**

Scott next challenges the admission of B.H.'s multiple statements indicating that Scott had a propensity to act violently toward her. The challenged testimony falls into two categories: (a) testimony about Scott's violent actions, gestures, and threats on the night of the incident and (b) general statements that B.H. knew from past experience that Scott was likely to hurt her if she did not comply with his orders or if she contacted the police.

As an initial matter, the parties dispute which standard of review governs our consideration of this issue. Accordingly, we must first determine whether Scott objected to the challenged testimony at trial. Scott did not contemporaneously object to B.H.'s testimony about his violent conduct toward her. But he contends he preserved this issue for appeal through his pretrial motion to exclude references to human trafficking and a pending assault charge involving Scott and B.H. And he points to the district court's general pretrial ruling prohibiting *Spreigl* evidence. We are not persuaded. Even if B.H.'s general statements about Scott's violent nature constitute propensity evidence covered by the district court's *Spreigl* ruling, the generic nature of that ruling required Scott to make specific objections during B.H.'s testimony. *See State v. Word*, 755

7

N.W.2d 776, 783 (Minn. App. 2008) ("[E]videntiary objections should be renewed at trial when an in limine or other evidentiary ruling is not definitive but rather provisional or unclear, or when the context at trial differs materially from that at the time of the former ruling.").

Because Scott did not specifically object to B.H.'s testimony regarding his violent conduct, we review only for plain error. *See id.* at 781. Accordingly, Scott must establish the following: (1) error, (2) that is plain, and (3) affects his substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If all three prongs of the plain-error test are established, we will then assess whether the error must be corrected to ensure the fairness and integrity of the judicial proceeding. *Id.*

We first examine B.H.'s testimony concerning Scott's violent actions toward her on the night in question. B.H. stated that when she objected to Scott's instruction to keep giving J.C.-M. alcohol, he made "gestures" that meant "he's going to get violent." She also testified that when she opposed Scott's expressed intention to continue with his plan to "pull" J.C.-M., "[h]e got a little bit violent with me," and when she urged Scott to stop having sex with J.C.-M., he choked her. Scott argues that this constitutes inadmissible evidence of other crimes or bad acts offered to prove that he acted in conformity with them. Minn. R. Evid. 404(b); *see also State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965). We disagree. The challenged testimony relates to threats and conduct Scott directed at B.H. during the course of the sexual assault at the heart of this case. The testimony did not implicate unrelated acts or crimes. *See United States v. DeLuna,* 763 F.2d 897, 913 (8th Cir. 1985) (stating that "where the evidence of an act and the evidence

of the crime charged are inextricably intertwined, the act is not extrinsic and Rule 404(b) is not implicated"); *State v. Riddley*, 776 N.W.2d 419, 425-26 (Minn. 2009) (discussing how, in the context of Minn. R. Evid. 404(b), the state may prove all relevant facts and circumstances tending to establish any element of a charged offense, even if such facts and circumstances prove the defendant committed other crimes).

As to the second category of challenged testimony, B.H. generally explained that she understood Scott's "verbal" and "body-language" threats to mean "I was going to be beat if I didn't go along with what he said." She stated that Scott "doesn't care about hitting women," and that she complied with his directions and delayed reporting the incident to police because she "didn't want to get my ass beat." B.H. further explained that she was afraid to go to the police initially because "[s]omething would have got broken. I would have had bruises. I would have been not able to go in public for a week, maybe two weeks."

We agree with Scott that admission of this testimony may constitute error, as it tends to show Scott's propensity to act violently towards women and indicate that Scott had attacked B.H. on other occasions. But we cannot conclude that such error, even if plain, affected Scott's substantial rights. In determining whether there is a reasonable likelihood that error substantially affected the verdict, we consider the strength of the evidence, the pervasiveness of the error, and whether the defendant had an opportunity to rebut the evidence. *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007). Here, the prejudicial effect of B.H.'s statements was tempered by the fact that she did not elaborate on specific prior incidences of violence, and her general character testimony only made

9

up a small part of her overall testimony.  Moreover, B.H.'s testimony regarding Scott's violent character was not central to the state's case, which was otherwise strong.  Because we conclude that B.H.'s challenged statements did not substantially affect the jury's determination, the admission of this testimony does not constitute reversible error.

**Affirmed.**