*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0504**

State of Minnesota,
Respondent,

vs.

Eric Christopher Bakke,
Appellant.

**Filed February 29, 2016
Reversed and remanded
Cleary, Chief Judge**

Becker County District Court
File No. 03-CR-13-1826

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Gretchen D. Thilmony, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Jesson, Judge; and Kalitowski, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

On appeal from his conviction of a first-degree controlled substance offense, appellant Eric Christopher Bakke argues that he should be granted a new trial because the prosecutor improperly elicited testimony regarding the state's failed attempts to subpoena a key witness to testify at trial, and improperly elicited testimony concerning inadmissible statements that the unavailable witness made to the police. Because the prosecutor's conduct constituted clear error affecting appellant's substantial rights, we reverse and remand.

**FACTS**

On August 29, 2013, a Minnesota state patrol trooper received a tip that a nearby vehicle was driving erratically. The trooper located the vehicle, turned his emergency lights on, pulled in front of the vehicle, and gestured for the driver to pull over. The trooper then pulled over to the shoulder. The vehicle, driven by appellant, continued past the trooper's car and accelerated away. Appellant accelerated to about 95 miles per hour. The trooper pursued appellant while appellant traveled about two miles before pulling over and complying with the trooper's arrest. Appellant's passenger, Salina Clement, was found in possession of a marijuana pipe but no other drugs or paraphernalia were found.

Appellant was arrested and charged with fleeing a peace officer in a motor vehicle in violation of Minn. Stat. § 609.487, subd. 3 (2012), and with driving after cancellation in violation of Minn. Stat. § 171.24, subd. 5 (2012). While in jail, appellant made several

telephone calls that were recorded. Appellant made statements such as "I don't want people looking," and "[A]ll it's going to do is . . . get me into a lot of trouble." Based on these conversations, officers believed that appellant had thrown something of interest from his car during the chase. On September 4, 2013, six days after appellant's arrest, officers searched the area along the road where appellant had driven during the police chase. In a ditch near where the chase began, officers discovered a cylinder containing approximately 27 grams of crystal methamphetamine. On October 22, 2014, the complaint against appellant was amended to add one count of first-degree possession of a controlled substance in violation of Minn. Stat. § 152.021, subd. 2(a)(1) (2012).

At appellant's jury trial, the prosecutor elicited testimony regarding the passenger, Clement. Initially, in response to a question as to why the cylinder was not submitted for forensic testing for evidence to connect it to appellant, a police officer responded that police felt they already had sufficient confirmation. The officer stated that, "[we] felt it wasn't necessary to conduct any other analysis on it, based upon the conversations that we had with Salina Clement, and the jail cellphone calls, and information that [another officer] had received." Defense counsel objected to the response and asked that it be stricken. The court sustained the objection but the jury was not instructed to disregard the comments and the court did not state that the comments were stricken from the record.

Later, another officer described law enforcement's repeated, unsuccessful efforts to subpoena Clement to testify at trial. Defense counsel objected to the officer's narrative description of these efforts and the objection was sustained. The court asked the jury to

3

disregard the answer and had it stricken from the record, but allowed the prosecutor to rephrase. The prosecutor was permitted to pursue a similar line of questioning establishing and reinforcing that police repeatedly attempted to locate Clement to subpoena her for trial but were unsuccessful. The defense did not object further. Appellant was subsequently found guilty on all three counts. He was sentenced to 158 months in prison. This appeal followed.

## D E C I S I O N

Appellant contends that the prosecutor committed prejudicial misconduct. At trial, the prosecution introduced evidence in its case-in-chief of a police officer's belief that inadmissible statements made by an unavailable witness connected the appellant to the canister of drugs, making DNA testing of the canister unnecessary, and of another police officer's efforts to produce that witness for trial. Appellant argues that this constituted an improper effort to deprive him of a fair trial by referring to a non-appearing witness and suggesting this witness would have testified to his guilt. He argues that this prosecutorial misconduct entitles him to a new trial as to his conviction of first-degree controlled substance offense.

Appellant objected to the officer's testimony regarding efforts to subpoena Clement, but the record does not reflect the grounds on which the objection was sustained. Because the prosecution was then permitted to pursue this line of questioning without objection, and because both parties argued this case under a plain error standard of review, this court will regard the alleged misconduct as unobjected-to error.

4

"On appeal, an unobjected-to error can be reviewed only if it constitutes plain error affecting substantial rights." *State v. Ramey*, 721 N.W.2d 294, 297-98 (Minn. 2006) (citing Minn. R. Crim. P. 31.02). Minn. R. Crim. P. 31.02 states: "Plain error affecting a substantial right can be considered by the court on motion for new trial, posttrial motion, or on appeal even if it was not brought to the trial court's attention." Appellant has the burden of demonstrating that there was error and that the error was plain. *Ramey*, 721 N.W.2d at 302. An error is plain if it is "clear or obvious." *Id.* (quotation omitted). If these first two elements are established, the burden shifts to the state to show that there is no "reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotations omitted).

**Plain error**

Appellant argues that eliciting inadmissible testimony referencing a non-appearing witness constituted plain error. "It is improper for a prosecutor to ask questions that are calculated to elicit or insinuate an inadmissible and highly prejudicial answer." *State v. Henderson*, 620 N.W.2d 688, 702 (Minn. 2001). "We have made it clear that [t]he state will not be permitted to deprive a defendant of a fair trial by means of insinuations and innuendos which plant in the minds of the jury a prejudicial belief in the existence of evidence which is otherwise inadmissible." *State v. Harris*, 521 N.W.2d 348, 354 (Minn. 1994) (alteration in original) (quotations omitted). "Use of such insinuation and innuendo is reversible error whether the [reference to inadmissible evidence] is contained in the

5

question which the prosecutor asks or in the answer which the witness gives." *Id.* (quotation omitted).

"It is [also] improper conduct for a prosecutor to refer to a witness who was not called." *State v. Page*, 386 N.W.2d 330, 336 (Minn. App. 1986), *review denied* (Minn. June 30, 1986); *see also State v. Shupe*, 293 Minn. 395, 196 N.W.2d 127 (1972) (reversing based on prosecutor's reference to uncalled witness). In *Shupe*, the defendant alleged that the prosecutor erred during his closing argument by discussing witnesses he did not call during trial. *Id.* at 395, 196 N.W.2d at 127. The *Shupe* court found that the statement discussing absent witnesses who could add testimony related to defendant's guilt amounted to prejudicial error. *Id.* at 396, 196 N.W.2d at 128. The court explained that this prejudice is not necessarily cured by a limiting instruction, stating, "[w]e cannot assume that the jury was not influenced by the prosecutor's reference to the asserted fact that there was other testimony bearing upon defendant's guilt." *Id.* Conversely, reference to witnesses who were not called but whose testimony would have been duplicative of other evidence has been found to not amount to prejudicial error. *State v. Thomas*, 305 Minn. 513, 517, 232 N.W.2d 766, 769 (1975).

Here, the prosecutor elicited inadmissible testimony that investigators declined to do further forensic testing based on Clement's statements. This testimony insinuated that Clement's statements confirmed investigators' suspicion that the canister belonged to appellant. Then, the prosecutor furthered the implication that Clement's testimony would have provided additional evidence of guilt by eliciting testimony from a different officer

6

about the great efforts that the state expended to subpoena Clement. The evidence of these efforts suggested to the jury that Clement's testimony would have bolstered the prosecution's case.

Under certain circumstances, it may be permissible to present evidence explaining a witness's absence. *See, e.g.*, *State v. King*, 622 N.W.2d 800, 807-08 (Minn. 2001) (reviewing evidence about the state's failed efforts to produce a witness at trial to determine whether that witness was unavailable in the context of the Confrontation Clause). However, the state has not demonstrated what relevance the prosecution's questions about subpoenaing Clement had to the case, beyond the impermissible implication that Clement could have provided testimony of additional evidence of guilt.

Although the court sustained an objection to testimony regarding Clement's statements to police, it gave no instruction to the jury to ignore the statement. Moreover, even where a court does give instructions to ignore inadmissible evidence, it may be insufficient. *State v. Reardon*, 245 Minn. 509, 513, 73 N.W.2d 192, 195 (1955) (stating that where "the impact of the prejudicial remark may be such as to impart to the minds of the jury substantial prejudicial evidence not properly a part of the case, it is taking too much for granted to say its effect can be removed by an instruction from the court"). The prosecutor elicited highly prejudicial, inadmissible testimony. It is difficult to unring the bell.

Finally, this testimony was not merely duplicative of other evidence. Clement was the only person in the car with Bakke and the only witness who could have testified that

appellant possessed the canister or that appellant threw the canister out of the moving car, as the prosecution alleged. The suggestion that she would testify for the prosecution implied the existence of significant, additional evidence. The prosecution committed plain error when it elicited this testimony.

**Plain error affecting substantial rights**

Where appellant has shown prosecutorial misconduct constituting plain error, the burden shifts to the state to demonstrate the plain error did not affect appellant's substantial rights. *Ramey*, 721 N.W.2d at 302. "Prosecutorial misconduct affects substantial rights if there is a reasonable likelihood that the absence of misconduct would have had a significant effect on the jury's verdict." *State v. Davis,* 735 N.W.2d 674, 681-82 (Minn. 2007). When considering the misconduct's effect on the jury's verdict, the court "consider[s] the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *Id.* at 682.

These factors indicate that the state has not demonstrated that the plain error in this case did not affect appellant's substantial rights. Generally, when the prosecution presents its efforts to procure a witness for trial to the jury, it implies that this witness would have provided favorable testimony. The supreme court has explained the significant prejudice to a defendant when the prosecution creates the impression that an uncalled witness would have provided supplemental evidence of guilt. *Shupe*, 293 Minn. at 396, 196 N.W.2d at 128.

8

The prosecutor elicited highly prejudicial testimony from police that investigators declined to perform further investigation based on Clement's comments. The prosecution went on to document the great efforts investigators went through in order to subpoena Clement, which suggested to the jury that Clement's testimony would have strengthened its case. These two pieces of testimony combine to leave the unmistakable impression that a prosecution witness with direct knowledge of the crime would have inculpated appellant had she appeared at trial. A prosecutor cannot insinuate the existence of evidence in order to overcome the inability to produce that evidence at trial. The prosecution's implication that the witness it had hoped to call at trial gave statements to police inculpating appellant created a strong prejudice that appellant could not rebut.

In addition, the evidence against appellant was not strong. The prosecution essentially produced two types of evidence indicating appellant's guilt: the canister found six days later along the stretch of highway appellant had traveled while being chased by police, and the calls appellant made from prison referencing a search for something. The canister was not tested for fingerprints or DNA, so there was no physical evidence connecting it to appellant. The pursuing officer did not observe anything thrown from the car nor was anything visible on the squad car video. At trial, no witness testified to first-hand knowledge of appellant possessing the canister. Appellant's statements in the telephone calls referenced a search for something that would get him into trouble. However, appellant's statements were vague and he never made any unambiguously incriminating statements. Because the evidence was not particularly strong, the implication

that a witness made a statement connecting appellant to the canister was extremely significant.

In cases where courts found no substantial prejudice, evidence of the defendant's guilt was much stronger than was presented in this case. *See Davis*, 735 N.W.2d at 682 ("[T]he evidence against Davis was substantial and compelling and included his admission that he had shot Allan and Morocho during an attempt to rob them."); *State v. Dobbins*, 725 N.W.2d 492, 513 (Minn. 2006) ("[T]he state's case against Dobbins was very strong, and the evidence, both in the form of witness testimony and forensic evidence, overwhelmingly indicates that Dobbins shot and killed Lavender."); *State v. Swanson*, 707 N.W.2d 645, 658 (Minn. 2006) ("[T]he state's case was very strong. Hansen and House both testified that they saw Swanson shoot Schultz. DNA evidence linked both Swanson and Combs to a cigarette butt found at the Schultz residence, and also linked Swanson and Schultz to a blood stain . . . .").

References to Clement appearing as a witness were not pervasive in the prosecution's case, but the references that were made were crucial to the successful prosecution of appellant. The implication that the only witness with direct knowledge of the alleged crime inculpated appellant in statements to police is highly influential. This implication can color the jury's perception of the circumstantial evidence presented. Although appellant addressed Clement's absence in closing argument, this was done out of necessity in response to the prosecution's prejudicial misconduct. The prosecution

implied the existence of significant evidence, which created strong prejudice that appellant could not effectively counter.

**Fairness and integrity of judicial proceedings**

When the three prongs of plain-error review are met, "the court then assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 302. "Appellate courts should not hesitate in a suitable case to grant relief in the form of a new trial." *Id.* at 303 (quotation omitted).

Here, a new trial must be granted to preserve the fairness and integrity of the judicial proceedings. All three prongs of plain-error review are satisfied in this case. Creating the impression that a non-appearing witness would have testified to key evidence of guilt constituted plain error. This improperly elicited evidence was not duplicative but essential to the prosecution's case. The plain error created prejudice that significantly affected the fairness of the proceedings. A new trial must be granted.

**Reversed and remanded.**

11